**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| redT HOMES, | CIVIL ACTION NO.: 1:25-cv-01681 |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| CITY AND COUNTY OF DENVER, | |
| Defendants. | |

## INTRODUCTION

1.     Plaintiff redT Homes (redT) is an award-winning Denver homebuilder that has earned a reputation building attainably-priced, LEED-certified, and sustainably-constructed homes for Denver residents. redT's signature "LiteHomes," which are "Lite on Your Wallet and Lite on the Planet," exemplify the company's commitment to tackle the housing crisis plaguing its home city of Denver in an affordable and environmentally friendly way.

2.     Rather than embrace the efforts of builders like redT, the City and County of Denver (Denver) makes their work more difficult—and much more expensive—by inverting a fundamental law of economics: more supply means lower prices. Turning that axiom on its head, Denver reached the remarkable conclusion that its housing shortage is *caused by building more homes*. Thus, it refuses to issue development permits until homebuilders like redT—the very people resolving housing affordability issues adding much-needed supply—pay a fee into Denver's affordable housing fund. For example, Denver imposed a fee of approximately $45,000

as a condition on redT's application to build two duplexes (the South Sherman Duplex Project) and a fee of approximately $25,000 as a condition on its application to build four single-family homes (the West Gill Single-Family Project).

3.    As a matter of logic, Denver cannot make housing more affordable by making it more expensive. As a matter of constitutional law, it cannot abuse its land-use permitting authority to take money or property from applicants in order to address problems that those applicants do not create. Under Supreme Court precedents in *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987), *Dolan v. City of Tigard*, 512 U.S. 374 (1994), *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013), and *Sheetz v. El Dorado Cnty.*, 144 S. Ct. 893 (2024), Denver cannot force land-use permit applicants to give up money or other property as a condition of granting a permit unless the money or property demanded is designed to mitigate some public problem that the applied-for development would create.

4.    This Complaint challenges Denver's Dedicated Fund for Affordable Housing Ordinance ("Linkage Fee Ordinance"), Denver Rev. Muni. Code (DRMC) Ch. 27, art. V. redT Homes seeks a declaration that the requirements of the Ordinance respecting residential development represent unconstitutional conditions both facially and as applied. It further seeks an injunction prohibiting Denver from imposing exactions under the Ordinances and an award of attorney fees and costs incurred in this action. Accordingly, redT Homes alleges as follows:

**JURISDICTION AND VENUE**

5.      This suit is filed pursuant to 42 U.S.C. § 1331 (federal question) as it arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(4) (civil rights) as it seeks redress of civil rights violations under 42 U.S.C. § 1983.

6.      This suit also seeks a remedy under the Declaratory Judgment Act, 28 U.S.C. § 2201.

7.      The property that is the subject of this action is located, and the civil rights violations alleged herein took place, in Denver, Colorado.  Therefore, venue is proper in this judicial district.

**PARTIES**

8.      Plaintiff redT Homes is a limited liability company organized and operating under the laws of the State of Colorado, and whose principal place of business is the State of Colorado. As a developer of residential property in Denver, it is subject to the challenged Ordinance.

9.      Defendant City and County of Denver is a political subdivision of the State of Colorado, the local governing authority in Denver, and the party who promulgates and enforces the unconstitutional policies, customs, and practices alleged herein.

**LEGAL BACKGROUND**

**The Takings Clause and Land Use Permit Exactions**

10.      Under the Takings Clause of the Fifth Amendment to the United States Constitution, no government agency may take private property for a public use

3

without paying just compensation. U.S. Const. amend. V (Takings Clause); XIV (applying Takings Clause to state and local governments). As a corollary to this rule, a government agency imposing a land-use permit condition that requires the dedication of private property, including money, "must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Dolan*, 512 U.S. at 391; *see Koontz*, 570 U.S. 595 (holding that monetary exactions are subject to the same requirement). Specifically, the agency must carry the burden of showing that the exaction bears an "essential nexus" and "rough proportionality" to the public impacts of the proposed project, lest the exaction be nothing more than an "out-and-out plan of extortion." *Nollan*, 483 U.S. at 837; *Dolan*, 512 U.S. at 391.

## The Linkage Fee Ordinance

11.    The Linkage Fee Ordinance sets out a program of development fees imposed on new development. A true and correct copy of Article V of Chapter 27 of Denver's Municipal Code is attached hereto as **Exhibit A**. This copy was downloaded on May 19, 2025, from library.municode.com/co/denver, which is linked from Denver's official website at denvergov.org/government/legislation-and-transparency. A true and correct copy of the linkage fee schedule adopted pursuant to the Linkage Fee Ordinance, as made available on Denver's official website,[1] is attached hereto as **Exhibit B**.

---

[1]    https://denvergov.org/Government/Agencies-Departments-Offices/Agencies-Departments-Offices-Directory/Community-Planning-and-Development/Plan-Review-Permits-and-Inspections/Development-Fees/EHA-Ordinance-and-Affordable-Housing-Fee#section-2 (last visited May 29, 2025).

4

12.     Enforcement and application of the Ordinance is overseen by Denver's Department of Housing Stability, or HOST.

13.     The Linkage Fee Ordinance applies to all residential developments containing fewer than ten dwelling units, with enumerated exceptions not relevant here. It also applies to commercial and industrial developments. DRMC §§ 27-153(a), -154.

14.     Depending on the type of development, the fees required for the issuance of a building permit currently range from $1.99 to $7.22 per square foot of gross floor area. *Id.* § 27-153(a). For example, the South Sherman Duplex development is subject to a fee of $6.17 per square foot. By contrast, a commercial sales service development in a typical market area would be charged a fee of $4.97 per square foot.

15.     The fee schedule is designed to increase in July of each year. Thus, for example, beginning in July of 2025, the fee for a development like the South Sherman Duplex project is set to increase from $6.17 per square foot to $8.00 per square foot. *Id.*

16.     The Linkage Fee Ordinance provides that the executive director of HOST may reduce or waive the amount of linkage fees if an applicant "demonstrates that the required amount of fees exceeds the amount that would be needed to mitigate the actual demand for affordable housing created by the development." *Id.* § 27-157(a).

17.     According to the legislative findings contained in the Linkage Fee Ordinance, "[t]he extraordinary housing cost increases in Denver are driven, in part,

by the pace of population and job growth in the city, resulting in a situation where demand for housing has far outpaced supply[.]" *Id.* § 27-151.

18.     The legislature further found that new "residential and non-residential development is demonstrably associated with the generation of new jobs at various income levels, with the number of jobs associated with any particular development being correlated with the type and size of the development." *Id.* § 27-151(a). For this and other reasons, the city council "determined there is a direct nexus between both non-residential and residential development, job growth, and demand for new housing that is affordable[.]" *Id.* § 27-151(d).

19.     These legislative findings are purportedly "supported by the 'Denver Affordable Housing Nexus Study' prepared for" Denver by "David Paul Rosen & Associates and dated September 8, 2016, the contents of which are expressly incorporated" in the Ordinance "as a part of the legislative findings of the city council." *Id.* § 27-151(h). The study is available from Denver's official website at: https://denvergov.org/files/assets/public/v/1/housing-stability/documents/denver_r_nexus-study-final-090816.pdf (last visited May 29, 2025).

20.     The Nexus Study underlying the Linkage Fee Ordinance relies on the argument that new housing development creates economic activity which results in an increased workforce in need of housing.

21.     It begins by estimating the sale or rent price of a "prototypical" residential unit and "moves through a series of linkages to the incomes of the households that purchase or rent the units, the annual expenditures of those

households on goods and services, the jobs associated with the delivery of these goods and services, the income of the workers performing those jobs, the household income of those worker households, and finally to the affordability level of the housing needed by those worker households."

22.     The linkage fees contained in the Ordinance are purportedly "supported by the 'Expanding Housing Affordability: Feasibility Analysis' prepared for the City and County of Denver by Root Policy Research and dated September 28, 2021, the contents of which are expressly incorporated" in the Ordinance "as part of the legislative findings of the city council." *Id.* § 27-151(i). The Executive Summary of this analysis is available from Denver's official website at: https://www.denvergov.org/files/assets/public/v/2/community-planning-and-development/documents/zoning/text development/documents/zoning/text-amendments/housing-affordability/eha_exec_summary_feasibility_analysis.pdf (last visited May 29, 2025).

### Factual Allegations

23.     redT Homes is a residential real estate development firm located in Denver, Colorado, whose mission is to develop sustainably built and attainably priced homes.

24.     The firm's portfolio includes a variety of residential projects ranging from single-family "LiteHomes"[2] to 25-unit townhomes and apartments. Their achievements in environmentally sustainable development have earned them the

---

[2] redT's LiteHomes are "newly constructed, LEED Gold Certified (or higher) single-family, duplex, and townhome residences" designed to be "Lite on your wallet and Lite on the planet." redThomes.com, *What are LiteHomes*? https://www.redthomes.com/litehomes (last visited May 29, 2025).

2023 Xcel Energy Sustainable New Housing Program Award for the best individual electric-only builder overall. *See* redThomes.com, *redT Homes Honored as Best Individual Electric Only Builder Overall in 2023 Xcel ESNH Program*, https://redthomes.com/blog/best-electric-only-builder/.

25.    The firm's commitment to sustainable, attainable housing makes them a major player in helping to address Denver's housing shortage, which is estimated at approximately 100,000 units as of November 2023. *See* Aldo Svaldi, *Colorado is Short Over 100,000 Housing Units Despite Help from Construction Surge, Slow Population Growth*, Denver Post (Nov. 29, 2023, 2:45 PM), https://www.denverpost.com/2023/10/23/colorado-housing-home-shortfall-pandemic/.

26.    redT Homes has applied for and will continue to apply for development permits for projects that are subject to the Linkage Fee Ordinance.

27.    For example, redT Homes is currently seeking development approval for the South Sherman Duplex project, which consists of two "ying-yang" style duplexes (for a total of four units) located at 2140 and 2144 S. Sherman Street in Denver. Two of these units consist of three bedrooms each, while the other two consist of between two and three bedrooms each.

28.    The project will require approximately $44,917.60 under the Linkage Fee Ordinance (at $6.17 per square foot of gross floor area).

29.    redT Homes is also seeking development approval for the West Gill Single Family project, which consists of four single-family residences of three bedrooms each located at 1245, 1251, 1255, and 1261 W. Gill Place. The project will

require approximately $24,962.56 under the Linkage Fee Ordinance (at $3.92 per square foot of gross floor area).

30.    The difference between the fee per square foot charged in the two projects is due to the fact that the units in the South Sherman Duplex project are more than 1,600 square feet each, while the units in the West Gill Single Family project are less than 1,600 square feet each. Under the linkage fee schedule, development fees change depending on whether the units are above or below that square footage threshold.

31.    Both projects are certified "Gold" by LEED (Leadership in Energy & Environmental Design), the most widely used green building rating system in the world.

32.    On February 19, 2025, redT Homes applied for a waiver from the Linkage Fee Ordinance in connection with both the South Sherman Duplex project and the West Gill Single Family project. The waiver requests stated, in part, that the "proposed linkage fee may inadvertently hinder the development of housing in areas where affordable housing is most needed. This will have a negative impact on the community that we are trying to enhance in these locations through the provision of much needed housing." A true and correct copy of the waiver request forms are attached as **Exhibit C.**

33.    On March 13, 2025, Denver responded with a denial of the waiver request. True and correct copies of these denials are attached as **Exhibit D.**

34.     Denver has therefore made a final decision that the projects cannot obtain development permits unless redT homes dedicates property, in the form of money, to Denver.

## CLAIM FOR RELIEF

### Unconstitutional Exaction
### 42 U.S.C. § 1983, 28 U.S.C. § 2201

35.     All preceding allegations of this Complaint are incorporated by reference in this section as though fully set forth herein.

36.     The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides that a person "shall be liable to the injured party" when, acting under the authority of a statute or ordinance, he or she deprives an individual of a right secured by the U.S. Constitution.

37.     Denver is a person under 42 U.S.C. § 1983.

38.     Denver acted under color of the Linkage Fee Ordinance when it conditioned permit approval for the South Sherman Duplex project and the West Gill Single Family on a requirement that redT Homes pay linkage fees of $44,917.60 and $24,962.56 respectively.

39.     Denver has an established policy or custom of applying the Ordinance to exact property interests for the purposes of promoting affordable housing from permit applicants seeking to create housing units.

40.     redT Homes is a citizen of the United States or a person within the jurisdiction thereof, within the meaning of those terms in 42 U.S.C. § 1983.

41.    redT Homes possess rights, privileges, and immunities secured by the Constitution and laws of the United States, including, but not limited to:

a.    The right, privilege, or immunity to build on its own property, even if subject to Denver's legitimate permitting requirements. *Nollan*, 483 U.S. at 834 n.3.

b.    The right, privilege, or immunity to not have its private property taken by Denver for public use, without just compensation. U.S. Const. amends. V, XIV.

c.    The right, privilege, or immunity to be free of deprivations of its property by Denver without due process of law. U.S. Const. amend. XIV.

d.    The right, privilege, or immunity to not be forced by the City to forgo one constitutional right in order to enjoy another, or to choose between which constitutional rights it wishes to exercise.

e.    The right, privilege, or immunity to not comply with the Linkage Fee Ordinance unless and until the City makes some sort of individualized determination that the required dedication is related both in nature and extent to the impact of redT Homes' proposed developments. *Dolan*, 512 U.S. at 391.

42.    The doctrine of unconstitutional conditions, as set out by *Nollan*, *Dolan*, *Koontz*, and *Sheetz*, is a federal doctrine designed to enforce the primacy of the Fifth and Fourteenth Amendments to the U.S. Constitution against state and local

11

governments in the land-use permitting context. As such, a violation of the doctrine of unconstitutional conditions is actionable under 42 U.S.C. § 1983.

43.    Denver imposed unconstitutional conditions on the South Sherman and West Gill projects, and it routinely imposes unconstitutional conditions on residential development by redT Homes and others under Linkage Fee Ordinance.

44.    The Linkage Fee Ordinance demands property in the form of money linked to a specific, identifiable property interest—*i.e.*, the specific parcels of real property for which development permits are sought

45.    Under the Doctrine of Unconstitutional Conditions, the government may demand property or money as a condition of approving a land use permit only if:

   a.   The property is needed to directly mitigate a public impact that would be directly caused by the development (the "essential nexus" test); and

   b.   The amount of property is roughly proportionate in magnitude to the public impact(s) of the development (the "rough proportionality" test).

46.    Both the essential nexus test and the rough proportionality test require heightened constitutional scrutiny.

47.    To meet its burden under these tests, the government must make "some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Dolan*, 512 U.S. at 391.

48.    The Linkage Fee Ordinance fails these constitutional standards with respect to residential development, both facially and as applied, because new residential development:

    a.  Neither creates nor contributes to the need for affordable housing;

    b.  Does not cause anybody else to be unable to afford housing; and

    c.  Alleviates housing affordability problems by creating new housing.

49.    Although the Linkage Fee Ordinance is supported by a Nexus Study, that Study is insufficient to justify the policy for several reasons:

    a.  It fails to account for the downward pressure that new supply puts on pricing;

    b.  It fails to account for the "filtering" effect of new housing supply, by which existing units are freed up by new units, and by which new units become more affordable over time.

    c.  It fails to establish the causal relationship between new residential development and increased workforce housing demands on which it relies; and

    d.  It cannot explain why new commercial and industrial development is sometimes subject to lower fees than new residential development, despite the fact that new commercial and industrial development is naturally more directly related to increased workforce housing demands.

50.     redT Homes did not have, and Denver did not provide, any other lawful alternative to the conditions imposed by the Linkage Fee Ordinance.

51.     redT Homes suffered a cognizable constitutional injury the moment Denver demanded that it accede to the unconstitutional demand as a condition on the issuance of its development permits.

52.     redT Homes is entitled equitable relief as allowed by 42 U.S.C. § 1983, and it is additionally entitled to declaratory relief under 28 U.S.C. § 2201.

### Relief Sought

WHEREFOR, Plaintiff respectfully requests that this Court grant the following relief:

A. A judgment that the Linkage Fee Ordinance violates the doctrine of unconstitutional conditions with respect to residential developments both facially and as applied to the South Sherman Single Family and West Gill Duplex projects; and that redT Homes suffered a violation of its civil rights when Denver conditioned the approval of its projects on its forfeiture of the right to just compensation for property taken;

B. Equitable relief in the form of an injunction prohibiting Denver from enforcing the Linkage Fee Ordinance on residential development, and an Order directing Denver to issue the subject permits without the offending fees;

C. An award of reasonable attorneys' fees for bringing and maintaining this action under 42 U.S.C. § 1988;

D. An award of costs of suit pursuant to Fed. R. Civ. P. 54(d); and

E. Any other relief that the Court deems just and proper under the circumstances.

DATED: May 29, 2025.

Respectfully submitted,

AUSTIN W. WAISANEN*
Pacific Legal Foundation
3100 Clarendon Blvd., Ste. 1000
Arlington, VA 22201
(202) 888-6881
AWaisanen@pacificlegal.org
*admitted only in the State of Wyoming

/s/ David J. Deerson
DAVID J. DEERSON
Pacific Legal Foundation
555 Capitol Mall, Ste. 1290
Sacramento, CA 95814
(916) 419-7111
DDeerson@pacificlegal.org

Counsel for Plaintiff

15