IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-1681-PAB-TPO

redT HOMES, LLC and redT CAPITAL PARTNERS, LLC,

Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER,

Defendant.

---

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

The City and County of Denver (the "City" or "Denver"), through undersigned counsel, respectfully requests that this Court dismiss Plaintiffs' claims in its Second Amended Complaint for Declaratory and Injunctive Relief ("Second Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). In support thereof, the City states the following:

**CERTIFICATION OF CONFERRAL PURSUANT TO D.C.COLO.LCivR 7.1(a)**

Because undersigned counsel does not believe amendment will cure the bases for dismissal identified below under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), counsel did not engage in conferral in accordance with D.C.COLO.LCivR 7.1(b)(2).

**INTRODUCTION**

This case involves a constitutional challenge to the Dedicated Funding for Affordable Housing ordinance, codified at Denver Revised Municipal Code Chapter 27, Article V (the "Linkage Fee Ordinance"), and the Mandatory Affordable Housing ordinance, codified at

Denver Revised Municipal Code Chapter 27, Article X (the "MAH Ordinance"), both enacted by the City Council of Denver to promote affordable housing. The Linkage Fee Ordinance requires building permit applicants to pay an affordable housing linkage fee as part of new residential and nonresidential construction in the City. The Linkage Fee Ordinance requires that all affordable housing linkage fees generated by development must be deposited into a special fund and used to increase the supply of rental and for sale housing in the City for households earning 80% or less of area median income. The MAH Ordinance requires developments of ten or more dwelling units to provide a certain portion of those units as affordable units. redT Homes, LLC and redT Capital Partners, LLC, the Plaintiffs, are seeking development approval for two duplexes at 2140 and 2144 South Sherman Street in Denver (the "South Sherman Properties"), and four single family residences at 1245, 1251, 1255, and 1261 West Gill Place in Denver (together, the "Properties"). Plaintiffs allege that the requirements of the Linkage Fee Ordinance and the Mandatory Affordable Housing Ordinance (jointly referred to as the "Ordinances") regarding residential development impose unconstitutional conditions both facially and as applied, in that the Ordinances fail to meet the constitutional tests for government required conditions of land use permits laid out in the United States Supreme Court cases of *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994). As explained more fully below, Plaintiffs' allegations are without merit and the Second Amended Complaint must be dismissed.

## LEGAL STANDARDS

I.  **Fed. R. Civ. P. 12(b)(1) Standard**

Standing is a necessary component of the United States Constitution's Article III case or

controversy requirement. *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1223 (10th Cir. 2008). The requirement that a party have standing "serves to ensure that the plaintiff is a proper party to invoke judicial resolution of the dispute." *Id.* An objection to standing is a jurisdictional question properly made in a Rule 12(b)(1) motion. *See, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89 (1998). In general, a plaintiff must assert their own legal rights and interests and cannot rest their claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). In a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Holt v. United States*, 46 F. 3d 1000, 1003 (10th Cir. 1995) (citation omitted). "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* (citation omitted). A court may consider evidence outside the pleadings "to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* (citations omitted).

II.     **Fed. R. Civ. P. 12(b)(6) Standard**

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient facts that, if assumed to be true, state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The Court must determine whether the complaint sufficiently alleges facts

necessary to establish an entitlement to relief under the legal theory proposed. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). Allegations consisting of legal conclusions, a formulaic recitation of the elements of a claim, or mere "labels and conclusions" are insufficient. *Twombly*, 550 U.S. at 555; *Iqbal* 556 U.S. at 678. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

## ARGUMENT

I.  **Plaintiffs lack Article III standing in this case and their claims should be dismissed under Fed. R. Civ. P. 12(b)(1).**

Under Clause 2 of Article III of the United States Constitution, federal courts may only adjudicate actual cases or controversies. The requirements of Article III standing are: "(1) an 'injury in fact,' (2) sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). First, the injury-in-fact must be "(a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical'. *Lujan*, 504 U.S. at 560. A plaintiff bringing a facial challenge to a law must still show an injury in fact sufficient to satisfy the Article III case-or-controversy requirement. *Grace Bible Fellowship v. Polis*, 694 F. Supp. 3d 1338, 1352 (D. Colo. 2023). Second, a causal connection must exist between the injury and the conduct complained of. *Id.* Third, it must be likely (rather than speculative) that the injury will be redressed by a favorable court decision. *Id.* A plaintiff bears the burden to establish its standing to bring its claims. *M. S. v. Premera Blue Cross,* 118 F.4th 1248, 1261 (10th Cir. 2024).

4

Each of Article III's standing requirements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 560.

According to the Linkage Fee Ordinance, affordable housing linkage fees are to be collected in conjunction with the administration of the City's system for issuing building permits. Second Am. Compl., Ex. A, at Sec. 27-156(a) (Doc. # 11-1). Under the City's building code, a building permit is issued when the work shown on submitted documents conforms to all the requirements of the building code, the requirements of other agencies, and the permit fee has been paid. *See,* Exhibit A, 2022 Denver Building Code Sec. 131.3.[1] Therefore, affordable housing linkage fees only become due once a building permit is ready to be issued.

Although Plaintiffs' Second Amended Complaint states that the City has already imposed affordable housing linkage fees on the Properties (Second Am. Compl. ¶¶ 2, 58 (Doc. # 11)), factually, this is not true. No building permits for the Properties are ready to be issued, and all permits are instead in various stages of review. *See,* Exhibit B, Firnhaber Declaration. Since the permits on the Properties are in various stages of review, any injury in fact caused by the Linkage Fee Ordinance to the Plaintiffs are only conjectural and hypothetical at the time of filing of its Second Amended Complaint. For example, as the permits continue to be reviewed, other regulatory burdens imposed by the City's Department of Transportation and Infrastructure or Zoning Department may cause Plaintiffs to abandon the various projects on the Properties, or the

---

[1] The entire Denver Building Code can be found at :
https://www.denvergov.org/files/assets/public/v/10/community-planning-and-development/documents/ds/building-codes/2022-denver-building-and-fire-code.pdf

5

permits may be denied for a myriad of other reasons. Because Plaintiffs cannot allege any injury in fact, as opposed to a hypothetical injury, they do not have standing to bring their claims against the City.

This Motion can include facts beyond the allegations contained in the Second Amended Complaint to challenge the facts upon which subject matter depends, and this does not convert to a Rule 56 motion as the jurisdictional question—whether injury in fact exists—is not intertwined with the merits of the case—here the constitutionality of the Ordinances. *See, Holt*, 46 F.3d at 1003.

Additionally, Plaintiffs state that neither redT Homes, LLC nor redT Capital Partners, LLC own the South Sherman Properties, but redT Homes. LLC is still responsible for paying the affordable housing linkage fees for those properties should a building permit be issued. Second Am. Compl. ¶¶ 43, 44 (Doc. # 11). The City's building code states that the owner of property or the owner's agent shall apply for building permits. *See*, Exhibit A, 2022 Denver Building Code Sec. 131.1. And the applicant for a building permit is responsible for paying affordable housing linkage fees. Second Am. Compl., Ex. A Sec. 27-156(a) (Doc. # 11-1). Therefore, since Plaintiffs do not own the South Sherman Properties and they have not pled that any of the other requirements of Denver Building Code Section 131.1 apply to them, they are not required by law to pay the affordable housing linkage fees for those properties, and thus are not suffering any injury in fact based on the Linkage Fee Ordinance regarding the South Sherman Properties.

As Plaintiffs cannot establish that they have suffered an injury in fact, they do not have standing to bring this suit, and their Second Amended Complaint should be dismissed.

**II.     The Linkage Fee Ordinance regarding residential development is not an unconstitutional condition.**

In order to state a claim for relief that the Linkage Fee Ordinance represents an unconstitutional condition, Plaintiffs must allege that the Linkage Fee Ordinance (i) conditions approval of a land use permit on the relinquishment of money or a portion of the owner's property; and (ii) that there is an appropriate "nexus" and "rough proportionality" between the conditions and the likely impact of the land use. *See,e.g.,Holcim - NER, Inc. v. Town of Swampscott*, 671 F. Supp. 3d 84, 94 (D. Mass. 2023) (citing *Koontz*, 570 U.S. at 599). Plaintiffs fail to allege the second element above.

When a government requires the dedication of property or a monetary exaction as a development condition, the condition must satisfy two requirements. First, the dedication must have an essential nexus to the government's land use interest. *Nollan*, 483 U.S. at 837. Second, the degree of the condition must be roughly proportional to the impact of the proposed development. *Dolan*, 512 U.S. at 391. A government is not required to ensure a precise mathematical calculation to justify the rough proportionality of the required condition, but a government must make some sort of individualized determination that the condition is related both in nature and extent to the impact of the proposed development. *Id.* If a governmental condition that an owner dedicate property or provide a monetary exaction fails either of the *Nollan* or *Dolan* tests, then the government has imposed an unconstitutional condition on the property owner as the government has required a person to give up the right to receive just compensation under the Takings Clause of the Fifth Amendment in order to receive a land use permit. *Dolan*, 512 U.S. at 385 The tests laid out in *Nollan* and *Dolan* also apply to ad hoc conditions to pay money instead of dedicating property, and to legislatively required permit

7

conditions involving the dedication of property or monetary exactions. *Koontz*, 570 U.S. at 612; *Sheetz v. County of El Dorado, California*, 601 U.S. 267 (2024).

> **A. Plaintiffs fail to allege that the affordable housing linkage fees due under the Linkage Fee Ordinance are not roughly proportional to the impacts of residential development.**

In order for the Linkage Fee Ordinance to be an unconstitutional condition, it must either not have an essential nexus to the legitimate governmental objective of alleviating affordable housing, or it must not be roughly proportional in nature and extent to the impact of the proposed development. Here, Plaintiffs fail to support any allegation that the Linkage Fee Ordinance is not roughly proportional so as to make it unconstitutional.

Plaintiffs allege that the Denver Affordable Housing Nexus Study—the study that was used as the basis for establishing affordable housing linkage fees—is insufficient because it fails to account for a number of development situations. Second Am. Compl. ¶ 72 (Doc. # 11). By failing to take into account the items listed in their Second Amended Complaint, Plaintiffs allude that the amounts of affordable housing linkage fees justified in the Nexus Study is skewed; in other words, had the Nexus Study taken into account the items in Paragraph 72 of the Second Amended Complaint, the Nexus Study would have justified affordable housing linkage fees lower than what was recommended in the study. *Id.*

What Plaintiffs argue is that the Nexus Study should have determined the maximum justifiable affordable housing linkage fees with an increased degree of precision or mathematical exactness. Such precision, however, is not legally required. As the United States Supreme Court stated in *Dolan*, no precise mathematical calculation is required to justify the rough proportionality prong of a permit condition requiring the dedication of property. *Dolan*, 512 U.S.

8

at 391. And the United States Supreme Court in *Sheetz* specifically did not address "whether a permit condition imposed on a class of properties must be tailored with the same degree of specificity as a permit condition that targets a particular development." *Sheetz*, 601 U.S. at 280.

Moreover, the fees recommended in the Nexus Study nearly nine years ago recommended fees for single family homes at $9.60 per gross square foot of development[2]. *See*, Exhibit C, Nexus Study Table 2, Estimated Maximum Legally Justifiable Nexus Fees. The fee recommended from a study back in 2016 for single family dwellings is still lower than the affordable housing linkage fees currently imposed for single family homes: $5.00 per square foot for dwelling units less than 1,600 square feet, and $8.00 per square foot for dwelling units more than 1,600 square feet. Second Am. Compl., Ex. B (Doc. # 11-1). In essence the amount of affordable housing linkage fees that have been imposed by the City have already been reduced through legislative policy. As the Linkage Fee Ordinance states,

> "The city council has determined that the fees set forth herein fall far below the amount of revenue that would actually be necessary to meet the demand for new affordable housing driven by the job growth that is associated with new development, and thus these fees do not exceed the applicable standards that define the maximum legally justifiable fee."

Second Am. Compl., Ex. A at 27-151(e) (Doc. # 11-1).

Because Plaintiffs' allegations amount to an argument that the City should have determined the affordable housing linkage fees in the Nexus Study with a precise mathematical calculation, and such precision is not required by law, they have failed to allege a valid claim that the Linkage Fee Ordinance is an unconstitutional condition.

---

[2] The entire Denver Affordable Housing Nexus Study can be found at : https://denvergov.org/files/assets/public/v/1/housing-stability/documents/denver_r_nexus-study-final-090816.pdf

### B. The Linkage Fee Ordinance allows for an individualized determination regarding its rough proportionality.

In order to allege a claim that the Linkage Fee Ordinance fails the rough proportionality test of *Dolan*, Plaintiffs must also allege that the City does not make some sort of individualized determination that the required amount of affordable housing linkage fees for a development is related both in nature and extent to the impact of the proposed development. Here, Plaintiffs have failed to plausibly allege this element.

Section 27-157 of the Linkage Fee Ordinance allows the applicant subject to affordable housing linkage fees to ask for a reduction or waiver of those fees if the applicant can show that the required fees exceed the amount needed to mitigate the actual demand for affordable housing created by the development. Second Am. Compl., Ex. A (Doc. # 11-1). Section 27-157 also lists examples that an applicant could provide to justify a waiver or reduction. *Id.* One of those examples deals with residential development and states that an applicant must show "[t]he unique characteristics of the residents who will occupy a residential development, and the likelihood those particular residents, due to their disposable household income or projected spending patterns, will not drive additional employment requiring additional affordable housing." *Id.* In other words, Section 27-157 gives the City the opportunity to review the individualized determination of affordable housing linkage fees for each development subject to the fees. Because the City does not know each development's intended residential make-up, it relies on the applicant to provide this information in order for the City to make an individualized determination.

In this case, Plaintiffs allege that they requested such a waiver for the Properties, and that the City denied their waiver requests for the Properties. Second Am. Compl., ¶¶ 48-49 (Doc. #

10

11). The City based these denials, however, on Plaintiffs' failure to show evidence that the disposable household income or projected spending patterns of the future residents of the Properties would not drive additional employment, and thus Plaintiffs failed to show that development of the Properties would not lead to the need for affordable housing. Second. Am. Compl., Ex. D at page 1, Ex. E at page 1 (Doc. # 11-1). Plaintiffs do not allege that they appealed either of these waiver denials.

Because the Linkage Fee Ordinance provides a mechanism for making an individualized determination of the applicable amount of affordable housing linkage fees due, it satisfies the rough proportionality prong of *Dolan*. That the Plaintiffs failed to demonstrate that they were entitled to the waiver is irrelevant to the availability of the waiver. *Dolan* only requires a mechanism for individual determination; it does not mandate approval of a waiver in all circumstances.

Plaintiffs have failed to state a claim that the Linkage Fee Ordinance does not meet *Dolan's* rough proportionality requirement, and so its claim that the Linkage Fee Ordinance is an unconstitutional condition must be dismissed.

### III.   The MAH Ordinance does not impose an unconstitutional condition.

Plaintiffs have stated that the requirements of the MAH Ordinance regarding residential development represent unconstitutional conditions both facially and as applied. Second Am. Compl. ¶ 4 (Doc. # 11). In order to state a claim for relief that the MAH Ordinance represents an unconstitutional condition, Plaintiffs must allege that the MAH Ordinance (i) conditions approval of a land use permit on the relinquishment of a portion of the owner's property; and (ii) that there is an appropriate "nexus" and "rough proportionality" between the conditions and the

11

likely impact of the land use. *See, Holcim - NER, Inc. v. Town of Swampscott*, 671 F. Supp. 3d 84, 94 (D. Mass. 2023) (citing *Koontz*, 570 U.S. at 599). Plaintiffs fail to allege the first element.

Non-monetary legislative conditions on land-use permits must pass the tests laid out in *Nollan* and *Dolan* only if the condition requires the permit applicant to allow the government or the public to physically invade its property. *Ramsey Winch Inc. v. Henry*, 555 F.3d 1199, 1208-09 (10th Cir. 2009) In both *Nollan* and *Dolan*, permit applicants were required to dedicate an easement to the government as a condition of land-use approval. *Nollan*, 483 U.S. at 836; *Dolan*, 512 U.S. at 385-386. And in both cases, the Supreme Court noted that had the government demanded that the permit applicants deed the easements to the government outside of the permitting context it would have been considered a *per se* physical taking. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 546 (2005) (citing *Nollan*, 483 U.S. at 831-832; *Dolan*, 512 U.S. at 384). A *per se* physical taking is one that compels a property owner to suffer a physical "invasion" of its property. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992). Therefore, the heightened scrutiny of *Nollan* and *Dolan* only applies to non-monetary exactions, when the condition would cause an owner to suffer a physical invasion of its property. The MAH Ordinance does not compel a property owner to suffer such an invasion.

The MAH Ordinance is intended to promote the construction of new affordable housing units in the City. Second Am. Compl., Ex. C, at Sec. 27-218(a) (Doc. # 11-1). In order to implement this intention, the MAH Ordinance requires any development of ten or more dwelling units to provide a certain portion of those units as affordable units. *Id.* at Secs. 27-219(t), 27-221(a). The MAH Ordinance also gives an applicant the option to pay a fee-in-lieu or negotiate an alternative to the base affordable unit requirement. *Id.*, at Secs. 27-219(t); 27-221(a); 27-224-

226.

The MAH Ordinance requires developments to provide a certain percentage of overall units as affordable units, and those units must be affordable to households meeting certain area median income limits. *Id.* at Sec. 27-224. The affordable restrictions of those affordable units must remain in place for a minimum of ninety-nine years, and the affordable units must be "functionally equivalent" in terms of construction and appearance to market rate units in the development. *Id.* Additionally, an applicant developing less than ten dwelling units has the option to comply with the MAH Ordinance. Second Am. Compl., Ex. A at Sec. 27-153(c) (Doc. # 11-1). The MAH Ordinance does not require a developer or owner of property subject to the ordinance to deed an easement, fee simple interest, or other type of property interest that would rise to the level of a physical invasion of its property in order to have its development approved.

Plaintiffs allege that the MAH Ordinance demands property dedications including a financial interest in the affordable units; the free alienation, control, and disposal of those affordable units; the right to lease or sell affordable units at a fair market price; and a servitude in the form of a restrictive covenant. Second Am. Compl. ¶¶ 65-66 (Doc. # 11). These are not the types of property dedications, however, that rise to the level of a physical invasion of property, and are thus not applicable to the heightened scrutiny of *Nollan* and *Dolan*.

Neither the United States Supreme Court nor the Tenth Circuit Court of Appeals has broadened the types of non-monetary conditions subject to *Nollan* and *Dolan*. The Tenth Circuit has held that *Nollan* and *Dolan* only applies when landowners were forced to dedicate portions of their privately owned land for public use in exchange for a development permit from the local governing authority. *Ramsey Winch Inc.*, 555 F.3d at 1209 (10th Cir. 2009) (internal citations

13

omitted).

Additionally, neither the United States Supreme Court nor the Tenth Circuit Court of Appeals has broadened the unconstitutional conditions doctrine to include governmental regulations imposing affordable housing requirements on developments. The Tenth Circuit Court of Appeals, in fact, concluded that a Santa Fe County ordinance that required a certain number of lots in new subdivisions to be developed and sold as affordable housing did not violate the unconstitutional conditions doctrine. *Alto Eldorado P'ship v. Cnty. of Santa Fe*, 634 F.3d 1170, 1178 (10th Cir. 2011). The court in Alto Eldorado said that, "[the] developers' claim in this case does not fall within *Nollan* and *Dolan* for this reason alone: the [affordable housing regulation] amounts to a restriction on how the developers may use their land should they choose to subdivide it or, in the alternative, the imposition of a fee. These interferences with property rights do not constitute physical *per se* takings." *Id.* Other courts have decided similarly regarding affordable housing requirements. S*ee, e.g., California Bldg. Indus. Assn. v. City of San Jose*, 351 P.3d 974, 991 (Cal. 2015), cert. denied, 577 U.S. 1179 (2016); *2910 Georgia Ave. LLC v. District of Columbia*, 234 F. Supp. 3d 281, 298-306 (D.D.C. 2017); *Home Builders Ass'n of Greater Chicago v. City of Chicago*, 212 F. Supp. 3d 1019, 1023-25 (N.D. Ill. 2016).

The MAH Ordinance, like the Santa Fe County ordinance in *Alto Eldorado*, does not require a developer to dedicate a property interest or pay money in place of dedicating a property interest. As such, the MAH Ordinance is not a condition subject to the *Nollan* and *Dolan* tests.

**IV.    The MAH Ordinance provides an option that satisfies *Nollan* and *Dolan*.**

Because the MAH Ordinance is not subject to the heightened scrutiny of *Nollan* and *Dolan*, it has a significant effect on the Linkage Fee Ordinance. The United States Supreme

Court has concluded that so long as a permitting authority offers the landowner at least one alternative that would satisfy *Nollan* and *Dolan*, the landowner has not been subjected to an unconstitutional condition. *Koontz*, 570 U.S. at 611. Since the on-site affordable housing compliance method is not even subject to *Nollan* and *Dolan*, the MAH Ordinance provides a constitutional alternative to the Linkage Fee Ordinance, assuming arguendo that the requirements of the Linkage Fee Ordinance impose an unconstitutional condition. Because the MAH Ordinance provides a constitutional alternative, the City has not imposed an unconstitutional condition through the requirements of the Linkage Fee Ordinance and MAH Ordinance regarding residential development.

## **CONCLUSION**

WHEREFORE, the City Defendant respectfully requests that the Court dismiss all of Plaintiffs' claims in its Second Amended Complaint for the foregoing reasons

Respectfully submitted this 25th day of August, 2025.

By: *s/ Adam C. Hernandez*
Adam C. Hernandez
Assistant City Attorney
City and County of Denver
201 West Colfax Avenue, Dept. 1207
Denver, CO 80202-5332
(720) 913-3275
adam.hernandez2@denvergov.org
*Attorney for Defendant the City and County of Denver*

15

## CERTIFICATE OF SERVICE

  I hereby certify that on August 25, 2025, I caused a true and correct copy of the foregoing **DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** to be electronically filed with the Clerk of Court and served on the following using the CM/ECF system:

David J. Deerson
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
ddeerson@pacificlegal.org

*Via email only:*

Austin W. Waisanen
Pacific Legal Foundation
3100 Clarendon Blvd., Ste. 1000
Arlington, VA 22201
awaisanen@pacificlegal.org

*Attorneys for Plaintiffs*

                *s/ Shannon Egan*
                Shannon Egan, Paralegal
                City and County of Denver
                201 West Colfax Avenue,
                Dept. 1207
                Denver, Colorado  80202-5332