## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-1681-PAB-TPO

redT HOMES, LLC and redT CAPITAL PARTNERS, LLC,

Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER,

Defendant.

---

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

### ARGUMENT

**I.    Plaintiffs lack Article III standing in this case and their claims should be dismissed under Fed. R. Civ. P. 12(b)(1).**

Plaintiffs do not have standing to challenge the Linkage Fee Ordinance and the MAH Ordinance. Mot. to Dismiss 4-6 (Doc. # 14). Specifically, Plaintiffs have not suffered an injury-in-fact at the time of filing their Second Amended Complaint. *Id.* at 5. "To establish an injury-in-fact, a plaintiff must show that they have suffered or likely will suffer 'an invasion of a legally protected interest' that is both (a) 'concrete and particularized' and (b) 'actual or imminent, not conjectural or hypothetical.' *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 109 (10th Cir. 2024) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

In their Opposition to Motion to Dismiss ("Opposition"), Plaintiffs state that it does not matter for standing purposes that they may eventually abandon the projects or be denied permits

for the projects for reasons unrelated to the Ordinances because it is the "extortionate demand" that is prohibited under the doctrine of unconstitutional conditions. Opposition 5 (Doc. # 19). A demand in the context of the Linkage Fee Ordinance, however, is only imposed when a permit is ready to be issued. Sec. Am. Complaint, Ex. A at Sec. 27-156 (Doc # 11-1). Therefore, if a permit is never issued to Plaintiffs, then no linkage fees will be due, and no affordable units would be required under the MAH Ordinance.

But, as Plaintiffs only address in passing, all of the permits submitted for the Properties are still in various stages of review. Mot. to Dismiss, Ex. B (Doc. # 14-2). Because the permit applications are in various stages of review, and there is no guarantee that these permit applications will ever be approved, Plaintiffs are alleging only injuries that are conjectural and hypothetical.

Plaintiffs cite to *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Florida* (508 U.S. 656, 666 (1993)) assumedly for the proposition that it is unnecessary for Plaintiffs to actually have permit approval in order for injury-in-fact to occur. Opposition 5 (Doc. # 19). However, this case deals with an equal protection claim regarding difficulties in members of one group to receive benefits as compared to members of another group, and the court in this context concluded that the injury-in-fact is the denial of equal treatment, not the ultimate inability to obtain a benefit. *Northeastern Florida Chapter of Associated General Contractors of America*, 508 U.S. at 666.  Here, Plaintiffs are not alleging any violation of equal protection regarding difficulty in receiving a permit compared to another group and so the holding of this case is inapplicable.

Plaintiffs also argue that an actual injury requires nothing more than *de facto* finality, and

that it is sufficiently certain that the City will demand payment of linkage fees. Opposition 3-4. (Doc. # 19). In the context of injury-in-fact, however, a *de facto* injury is the same as a concrete injury:  it must actually exist. See, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Only when a building permit is ready to be issued will linkage fees be demanded, and so Plaintiffs have not suffered a *de facto* injury because those permits are still under review.

Plaintiffs have also not suffered an imminent injury. An injury-in-fact must be actual or imminent. *Lujan*, 504 U.S. at 560. Plaintiffs state that it is substantially certain that the City will impose the Ordinances. Opposition 4 (Doc # 19). The standard for an imminent injury-in-fact is not that it is substantially certain, but that the injury "'must be *certainly impending* to constitute injury in fact,'" and that "'[a]llegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (emphasis in original). Because of the amount of work that still needs to be done by Plaintiffs regarding ultimate building permit approval, it is not certainly impending that these permits will be approved and thus linkage fees be demanded by the City.

Finally, Plaintiffs argue that redT Homes, LLC has been injured with respect to the South Sherman Properties—even though Plaintiffs do not own these properties—because redT Homes, LLC is acting as the agent for the owner of the South Sherman Properties. Opposition  6 (Doc. # 19). This argument ignores the basic tenet of principal-agency law. An agent has authority to act on behalf of and bind a principal. *See Dworkin, Chambers & Williams, P.C. v. Provo*, 81 P.3d 1053, 1058 (Colo. 2003) (citing to Black's Law Dictionary 62 (7th ed.1999) (defining "agency")). Therefore, any linkage fee paid by redT Homes, LLC is being paid for on behalf of its principal:  the owner of the South Sherman Properties.

3

II.    **Plaintiffs fail to allege that the affordable housing linkage fees due under the Linkage Fee Ordinance meet the heightened scrutiny of Nollan and Dolan.**

Plaintiffs correctly state that an exaction violates the constitution if it either lacks a nexus with or is dipropionate to the impacts of the development. Opposition 7 (Doc # 19). Plaintiffs cite to paragraph 70 of their Second Amended Complaint as allegations that the Linkage Fee Ordinance and the MAH Ordinance fail both the essential nexus and rough proportionality tests of *Nollan v. California Coastal Com'n*, 483 U.S. 825, 837 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994). Additionally, Plaintiffs cite to Paragraph 71 of the Second Amended Complaint where they have alleged no set of circumstances exist which the Ordinances could satisfy *Nollan* and *Dolan*.

Allegations like the kind Plaintiffs point to in their Opposition, however, still fail the plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint passes the plausibility standard when it pleads factual content sufficient for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Pleadings that contain labels, conclusions, and naked assertions devoid of further factual enhancement do not pass the plausibility standard. *Id.*

Here, the allegations cited in Plaintiffs Opposition are simply conclusions:  increasing housing supply lowers prices, and so there is no set of circumstances in which the Ordinances can satisfy *Nollan* and *Dolan*. Opposition 8 (Doc # 19). The Nexus Study, however, is a 102 page document that does show how new development—including new residential development—ultimately leads to a need for affordable housing. In light of the detail found in the Nexus Study, Plaintiffs allegations are conclusory.

**III.     The MAH Ordinance does not impose an unconstitutional condition.**

The heightened scrutiny of *Nollan* and *Dolan* only applies to non-monetary exactions, when a permit condition would cause an owner to suffer a physical invasion of its property. The MAH Ordinance does not require this invasion.

Plaintiffs argue that the rule stated above is incorrect and that the actual rule is the following:  "a land use permit condition is subject to the exactions doctrine if it would constitute a compensable taking if imposed outside of the permit context." Opposition 9 (Doc. # 19) (citing *Koontz v. St. Johns River Water Management Dist*, 570 U.S. 595, 612 (2013)). The United States Supreme Court, however, has specified the types of conditions associated with a land use permit that rise to a compensable taking subject to *Nollan* and *Dolan* analysis:  (i) conditions imposed on an ad hoc basis that would require an owner to suffer a physical invasion of its property (*See Lingle v. Chevron U.S.A. Inc*, 544 U.S. 528, 538, 546-47 (2005) (citing *Nollan* 483 U.S. at 831-32; *Dolan* 512 U.S. 384)); (ii) conditions imposed on an ad hoc basis that require an owner to pay a monetary exaction instead of dedicate property (*Koontz* 570 U.S. at 612); and (iii) conditions imposed on a legislative basis that require the payment of a monetary fee (*Sheetz v. County of El Dorado, California*, 601 U.S. 267, 276 (2024)[1]. The City's rule is simply identifying one of the types of permit conditions that the United States Supreme Court has specified must meet *Nollan* and *Dolan* heightened scrutiny.

Contrary to Plaintiffs' assertions, both *Ramsey Winch* and *Alto Eldorado* are relevant authorities for *Nollan* and *Dolan* analysis. *Ramsey Winch v. Henry*, 555 F.3d 1199 (2009); *Alto*

---

[1] *Sheetz* may also apply to legislative conditions requiring an owner to suffer a physical invasion of its property, like a generally applicable law that requires an owner to dedicate a portion of its property for a public street; however, the MAH Ordinance does not require such a dedication.

*Eldorado Partnership v. County of Santa Fe*, 634 F.3d 1170 (2011). *Ramsey Winch* and *Alto Eldorado* were decided prior to *Koontz* and *Sheetz* that held certain monetary exactions are subject to *Nollan* and *Dolan* analysis. But neither *Ramsey Winch* nor *Alto Eldorado* dealt with monetary exactions and so their analysis of non-monetary exactions is still relevant.

   *Ramsey Winch* involved an Oklahoma law banning employers from prohibiting employees from storing guns in locked vehicles on company property, and the plaintiffs in the case argued the law imposed an easement on plaintiffs' property and was akin to *Nollan* and *Dolan* physical invasion exactions. *See, Ramsey Winch*, 555 F.3d at 1202, 1209. The court analyzed the Oklahoma law and concluded that it was only a restriction on the use of plaintiffs' property because it did not require plaintiffs to dedicate portions of their privately owned land for public use in exchange for a development permit. *Id.* at 1209. In contrasting the circumstances in *Nollan* and *Dolan* with the Oklahoma law, the court did note that the Oklahoma law applied to all property owners, not just the plaintiffs. *Id.* In light of *Sheetz*, such a circumstance would not matter, and the court would not list it as justification for its reasoning. But this factor has no bearing on the ultimate conclusion of the court: in order to be subject to *Nollan* and *Dolan* heightened scrutiny the land use permit condition must require a physical invasion of property, not just a restriction on its use. *Id.*

   Likewise in *Alto Eldorado*, the court concluded that a Santa Fe County affordable housing law was not subject to heightened scrutiny of *Nollan* and *Dolan* because "the regulatory action amounts to a restriction on how the developers may use their land should they choose to subdivide it or, in the alternative, the imposition of a fee. These interferences with property rights do not constitute physical [invasions of property] takings" *Alto Eldorado*, 634 F.3d at 1178. In

light of *Koontz* and *Sheetz*, the imposition of a fee would not be a factor for the court to consider as part of its justification regarding *Nollan* and *Dolan* applicability.  But that does not nullify the court's analysis that the county's affordable housing law was not a physical invasion of property, but only a restriction on the use of property. And as *Koontz* stated, so long as the government provides an option that does satisfy *Nollan* and *Dolan*, there is not unconstitutional condition. *Koontz*, 570 U.S. at 611-12. Therefore, the fact that the county law provided a fee-in-lieu option is irrelevant so long as the affordable housing requirement either satisfies *Nollan* and *Dolan*, or is not even applicable to *Nollan* and *Dolan* heightened scrutiny.

Plaintiffs also argue that *Koontz* somehow broadened the types of non-monetary exactions subject to *Nollan* and *Dolan* through *Koontz's* discussion of liens. Opposition 10 (Doc. # 19) (citing *Koontz*, 570 U.S. at 613). The analysis of liens in *Koontz*, however, involved justification on why *monetary* exactions would now be subject to *Nollan* and *Dolan*. *Koontz*, 570 U.S. at 613. In takings cases unrelated to land use condition cases, *Koontz* discussed that the government must pay just compensation when it takes a lien, as the lien is a right to receive money. *Id.* And so a condition requiring the payment of money in the land use context, according to *Koontz*, would also be a compensable taking, and thus subject to *Nollan* and *Dolan*. *Id.*  This section of the *Koontz* opinion did not discuss non-monetary exactions, and so Plaintiffs' argument is not persuasive.

Plaintiffs further argue that the MAH Ordinance impairs the property right in Colorado to "fix the price at which one will sell this property" by discussing *Olin Mathieson Chemical Corp. v. Franics*. 301 P.2d 139 (Colo. 1956). Opposition 10-12 (Doc. # 19). Plaintiffs' reliance on *Olin*, however, is misguided.

As a threshold matter, not all interferences with property rights rise to the level of a taking. *See Sheetz*, 601 U.S. at 274 (explaining that government can regulate and interfere with property rights, specifically land, so long as such interference does not cross certain boundaries). Plaintiffs have not cited any United States Supreme Court case nor Tenth Circuit Court of Appeals case holding that interference with the right to sell property at a price set by the owner is subject to *Nollan* and *Dolan* analysis.

The MAH Ordinance is also distinguishable from the Colorado Fair Trade Act at issue in *Olin*. The Colorado Fair Trade Act dealt with personal property, where the MAH Ordinance deals with restrictions on the use of real property. *Compare, Olin*, 301 P.2d at 141 (citing statutory language of the Act dealing with contracts for commodities) and Sec. Am. Complaint, Ex. C at Sec. 27-223 (citing compliance with the ordinance requires restrictions on real property).

Additionally, the Colorado Supreme Court in *Olin* stated that the price-fixing component of the Colorado Fair Trade Act—the component at issue in the case—was unconstitutional unless authorized under the police power. *See Olin*, 301 P.2d at 152; *see also, Asphalt Paving Co. v. Cnty. Comm'rs of Jefferson Cnty.*, 162 Colo. 254, 265, 425 P.2d 289, 295 (1967) (stating that all private property is held subject to the reasonable police powers of the state as exercised through properly constituted authorities).

The MAH Ordinance states it is the public policy of the city to "[i]ncrease the availability of additional low- and moderate-income housing to address existing and anticipated future housing needs of the workforce in Denver and unmet needs of residents in Denver" and to "[e]nsure diverse housing options continue to be available for households earning at or below the

area median income." Sec. Am. Complaint, Ex. C at Sec. 27-218 (f) and (g). Such justifications for implementing the MAH Ordinance are obviously authorized under the police power, as they promote the safety and welfare of Denver citizens by providing housing for lower income households. *See Colorado Union of Taxpayers Foundation v. City of Aspen*, 418 P.2d 506, 512 (Colo. 2018) (stating that a municipality may set forth regulations to promote the health, safety, and welfare of its citizens under the police power).

Plaintiffs also cite to Colorado's rent control statute, Colorado Revised Statute Sec. 38-12-301(1), as evidence that the right to sell property at an owner's chosen price is as strong today as it was in 1952. This reliance on the rent control statute, however, does not help Plaintiffs' argument. Under another Colorado statute, local governments may restrict rents on new or redeveloped housing under the local government's authority to plan and regulate land use to promote the construction of new affordable housing units. Colo. Rev. Stat. Sec. 29-20-104(e.5). And the state's rent control statute will not apply to any land use regulation adopted under this authority that restricts rents on new or redeveloped housing so long as the law provides certain options and alternatives to the developer, and the local government takes specific actions. Colo. Rev. Stat. Sec. 29-20-104(e.5) and (e.7). Colorado statutes, therefore, have explicitly authorized that local governments may control the prices of rents.

Plaintiffs also state that the MAH Ordinance takes a property interest in the form of a 99 year restrictive covenant, alluding that such an interest would implicate *Nollan* and *Dolan* heightened scrutiny. Opposition 13 (Doc. # 19). Neither the Supreme Court, nor Tenth Circuit Court of Appeals have held that the requirement to execute a restrictive covenant implicates *Nollan* and *Dolan* analysis. Additionally, in Colorado restrictive covenants are not considered

property interests. *See Thornton v. Schobe*, 243 P. 617, 618 (Colo. 1925) (concluding that an agreement restricting the use of land does not relate to an interest in land, but merely to its use); *see also*, 2 Stephen A. Hess, *Colo. Prac., Methods Of Practice* § 65:4 (7th ed. 2025) (explaining the distinction between easements and restrictive covenants).

The MAH Ordinance does not require an owner to suffer a physical invasion of its property, and thus is not subject to the heightened scrutiny of *Nollan* and *Dolan*.

## <u>CONCLUSION</u>

WHEREFORE, the City Defendant respectfully requests that the Court dismiss all of Plaintiffs' claims in its Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Respectfully submitted this 29th day of September, 2025.

By: *s/ Adam C. Hernandez*
Adam C. Hernandez
Assistant City Attorney
City and County of Denver
201 West Colfax Avenue, Dept. 1207
Denver, CO 80202-5332
(720) 913-3275
adam.hernandez2@denvergov.org
*Attorney for Defendant the City and County of Denver*

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2025, I caused a true and correct copy of the foregoing **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** to be electronically filed with the Clerk of Court and served on the following using the CM/ECF system:

David J. Deerson
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
ddeerson@pacificlegal.org

*Via email only:*

Austin W. Waisanen
Pacific Legal Foundation
3100 Clarendon Blvd., Ste. 1000
Arlington, VA 22201
awaisanen@pacificlegal.org

*Attorneys for Plaintiffs*

s/ Shannon Egan
Shannon Egan, Paralegal
City and County of Denver
201 West Colfax Avenue,
Dept. 1207
Denver, Colorado  80202-5332